```
          IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF OHIO
                     WESTERN DIVISION
```

Deborah Edwards,            )
                            )
            Plaintiff,      ) Case No. 1:05-CV-315
                            )
    vs.                     )
                            )
John E. Potter,             )
Postmaster General, et al., )
                            )
                            )
            Defendants.     )

O R D E R

This matter is before the Court on Defendant Postmaster General John E. Potter's motion for summary judgment (Doc. No. 21). For the reasons that follow, Defendant's motion is well-taken and is **GRANTED**.

I. Background

Plaintiff Deborah Edwards began working for the United States Postal Service in August 1986 as a Level 5 Keyer Support Clerk at the Cincinnati Bulk Mail Center in Sharonville, Ohio. Complaint ¶ 11-12. According to the Postal Service's memorandum, this position involves typing the zip code on a package and then pushing it onto a moving conveyor belt. The level of physical exertion required to perform this position is not clearly described in this record, but it is undisputed between the parties that Plaintiff became physically unable to perform the essential functions of a keyer support clerk.

Beginning in 1994, Plaintiff submitted several claims to the Office of Workers' Compensation Programs ("OWCP") for work-related injuries. Specifically, Plaintiff claimed

disability based on cervical and thoracic strain, bilateral elbow epicondylitis, and bilateral shoulder tendinitis. On May 17, 1996, the OWCP issued a decision finding that Plaintiff was disabled based on these conditions. Doc. No. 23, Plaint. Aff. Ex. 1. On February 14, 1997, the OWCP notified the Bulk Mail Center that Plaintiff could return to work with permanent restrictions of limited lifting, bending, and reaching, no lifting over 20 pounds, and no frequent bending or stooping during an 8 hour day. Id. Ex. 5. On February 27, 1997, the Bulk Mail Center offered and Plaintiff accepted a temporary position which accommodated her restrictions while it sought a permanent position for her. Id. Ex. 6; Plaint. Aff. ¶ 18.

In November 1997, only few months after it had determined that Plaintiff was permanently disabled from a work-related injured, the OWCP issued another decision finding that Plaintiff's injury-related disability had ceased. Id. Ex. 8. Plaintiff disputes the accuracy of the OWCP's conclusion, but this determination was affirmed on appeal. Plaint. Dep. at 28.

In any event, according to Plaintiff's affidavit, from 1997 through 2001, the Bulk Mail Center accommodated her alleged disabilities by assigning to her to light duty positions. Plaint. Aff. ¶ 13. Within the Postal Service, there is a dichotomy between "light duty" positions and "limited duty" positions. Limited duty positions are given to employees who have sustained job-related injuries as determined by the OWCP. Light duty positions are assignments given to employees who have

non-job-related injuries. Assignment of light duty positions is controlled by the collective bargaining agreement between the Postal Service and the American Postal Workers Union. See Doc. No. 21, Ex. B, Funderburg Aff. ¶¶ 5-7.

In February 2001, Plaintiff was reassigned as a distribution clerk. Plaint. Aff. ¶ 23. Although Plaintiff claims in her affidavit that this position was more strenuous than her previous position, she does not claim that it did not accommodate her work restrictions. Id.

In March 2001, Plaintiff filed a notice of recurrence of disability with the OWCP. For reasons unknown, Plaintiff's notice did not reach the OWCP, but she did not learn of this until February 2002. Id. ¶¶ 25, 29. In the interim, Plaintiff applied for and received another light duty position which accommodated her restrictions. Id. ¶ 26. Plaintiff apparently held this position for about one year. Id.

At some point in 2001 George Graves became the plant manager for the Bulk Mail Center. Funderburg Aff. ¶ 10. Graves established a committee to administer the limited duty/light duty program. Once the committee was established, it decided to require employees holding light duty positions to update their medical records. Id. It was at this point that the events leading to this lawsuit unfolded.

According to the Postmaster General, Plaintiff's temporary light duty position expired. Id. ¶ 11. As near as the Court can discern from the record, this must have occurred around

March 2002. The Postmaster General claims that Plaintiff insisted upon being re-assigned to a limited duty position and that she refused to apply for a light duty position. Id. Plaintiff, however, was not eligible for a limited duty position because she was not classified as disabled by the OWCP. Id. Apparently, Plaintiff's refusal to apply for a light duty position was based on her presumably filed, but actually missing, notice of recurrence of disability with the OWCP.[1] See Plaint. Aff. ¶ 33 (claiming that the Postal Service was not permitted to reassign her while her request was pending with the OWCP). According to Plaintiff's affidavit, on May 7, 2002, she was escorted from the Bulk Mail Center for failure to provide proof of injury. Id. ¶ 31. Plaintiff claims that she was constructively discharged from the Postal Service at this point.

The documentation submitted by the Postmaster General indicates that on July 22, 2002, Plaintiff contacted the Bulk Mail Center to request a modified work assignment due to an injury. Plaint. Dep. Ex. 1. In response, the human resources director asked Plaintiff to provide an update from her physician on her current medical restrictions and their expected duration. Id. On October 11, 2002, Defendant Pelletier, who was the supervisor of distribution operations, sent Plaintiff a letter advising her that the Postal Service would consider her to be

---

[1] Plaintiff submitted her claim of recurrence of disability in February 2002, but learned in May 2002 that the OWCP still had not received it. She then filed her claim for the third time. The OWCP received this claim, but denied it on December 13, 2002. Plaint. Aff. ¶ 34.

4

absent without leave unless she provided documentation substantiating her period of absence within five days. Plaint. Dep. Ex. 2.

On November 4, 2002, Pelletier sent a second letter to Plaintiff. In the interim, Plaintiff's attorney had submitted documents purporting to substantiate her disability. According to this letter, Pelletier determined that the documents did not support a claim of total disability from duty since the doctor's notes indicated that Plaintiff was only partially disabled for the period May 22, 2002 to June 15, 2002. Plaint. Dep. Ex. 3. Pelletier reminded Plaintiff that if she wanted a light duty assignment she was required by the collective bargaining agreement to apply for one. However, the letter stated, Plaintiff had failed to request a light duty position. Id. Accordingly, Pelletier informed Plaintiff that she was considered absent without leave and that corrective action, up to and including dismissal, would be taken. Id. On January 23, 2003, Plaintiff was terminated from the Postal Service. Plaint. Dep. Ex. 5.

On May 5, 2005, Plaintiff filed a complaint against the Postmaster General and Defendant Pelletier over her termination which invoked the full panoply of federal and state employment discrimination statutes. Specifically, the complaint alleges that Plaintiff was terminated in violation of the Americans With Disabilities Act ("the ADA), 42 U.S.C. § 12112, et seq., 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e, et seq., the Age Discrimination in Employment Act ("the ADEA"), 29 U.S.C. § 621, et seq., the Rehabilitation Act, 29 U.S.C. § 701, et seq., and the Ohio Civil Rights Act, Ohio Rev. Code Chapter 4112.  On February 14, 2006, on motion of the Defendants, the Court dismissed Plaintiff's ADA, § 1981, and Ohio Civil Rights claims.  Doc. No. 13.  It further appears that Plaintiff has abandoned any claim that she was discriminated against in violation of Title VII and the ADEA.  Accordingly, all that is left for decision is Plaintiff's claim that she was discriminated against in violation of the Rehabilitation Act.

On December 14, 2006, the Postmaster General filed a motion for summary judgment on Plaintiff's Rehabilitation Act claim.  In the motion, Defendant argues that summary judgment is appropriate because the record fails to establish that Plaintiff is disabled within the meaning of the Act because she does not have a substantially limiting impairment.  Defendant further argues that summary judgment is appropriate because Plaintiff was unable to perform the position of keyer-clerk.  In any event, Defendant argues, Plaintiff cannot rebut the legitimate non-discriminatory reason for her dismissal - her failure to apply for a light duty position and to provide documentation to substantiate her disability.

Plaintiff, on the other hand, argues that her burden to establish a prima facie case of discrimination is low and easily met in this case.  Plaintiff further argues that there is substantial evidence that Defendant's claim that she was

6

terminated for failing to substantiate her disability is pretextual. Plaintiff claims that the Postal Service had already determined that she was permanently disabled and that it had been assigning her to light duty jobs for four years prior to her dismissal. Plaintiff further claims that at the time of her removal from the Bulk Mail Center, the Postal Service was aware that she had filed a claim with OWCP for a recurrence of her disability. Finally, as further evidence of pretext, Plaintiff claims that in a prior case involving another party, <u>Karnes v. Runyon</u>, 912 F. Supp. 280 (S.D. Ohio 1995), Judge Spiegel found that the Bulk Mail Center has a pattern of discriminating against employees with disabilities.

Defendant's motion for summary judgment is now fully briefed and ready for disposition.

## II. <u>Summary Judgment Standard of Review</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654 (1962). "The mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original).  The Court will not grant summary judgment unless it is clear that a trial is unnecessary.  The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Id.

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962).  "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court

has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence.  Id.; Anderson, 477 U.S. at 250.  Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim.  Id.  Rule

9

56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

### III. Analysis

As indicated, Plaintiff in this case presents a claim for disability discrimination under the Rehabilitation Act. At this juncture, the Court notes that it is unclear whether Plaintiff is asserting a failure to accommodate claim based on the Postal Service's failure to assign her to another light duty position or a disparate treatment claim based on her termination. Other than the first paragraph, the complaint is cast in terms of failure to accommodate. The parties' briefs on summary judgment, however, present the case as if it were a disparate treatment case. Based on the parties' briefs, the Court concludes that Plaintiff is claiming only that she was terminated because of her disability in violation of the Rehabilitation Act.

The Court next observes that individual supervisors cannot be held liable under the Rehabilitation Act. Hiler v. Brown, 177 F.3d 542, 546-47 (6th Cir. 1999). Therefore, Plaintiff's Rehabilitation Act claim against Defendant Pelletier is meritless and is dismissed.

ADA standards apply in Rehabilitation Act cases alleging employment discrimination. Mahon v. Crowell, 295 F.3d

585, 589 (6th Cir. 2002). A plaintiff can establish a prima facie case of discrimination under the ADA in two ways.

If there is direct evidence that the employer relied on the plaintiff's disability in making the adverse employment decision, the plaintiff can establish a prima facie case of discrimination by showing that: 1) she is "disabled"; and, 2) she is qualified for the position despite her disability with or without reasonable accommodation from the employer, or with an alleged "essential" job requirement eliminated. Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1186 (6th Cir. 1996). Once the plaintiff establishes a prima facie case, the burden shifts to the employer to show that the challenged job criterion is a business necessity or that the proposed accommodation will impose an undue hardship on the employer. Id.

A plaintiff can establish a prima facie case of discrimination through circumstantial evidence by showing that: 1) she is "disabled"; 2) she is qualified for the position with or without reasonable accommodation; 3) she suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; 5) the position remained opened while the employer sought other applicants or the plaintiff was replaced. Id. If the plaintiff establishes a prima facie case of discrimination, the defendant must offer a legitimate nondiscriminatory reason for its action. Id. The plaintiff must then show that the reason proffered by the defendant is a pretext for discrimination. Id.

A key element under both methods of establishing a prima facie case of discrimination is that the plaintiff must prove that she is "disabled."

"Disability" under the ADA means:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual;

(B) a record of such impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Under regulations promulgated by the Department of Labor, "physical or mental impairment" means:

(1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine;  or

(2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h)(2002). "Major life activities" are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (2002). "Substantially limits" means:

(i) Unable to perform a major life activity that the average person in the general population can perform;  or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration

12

>>under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1) (2002). In determining whether an individual is "substantially limited in a major life activity," the court should consider:

>>(i) The nature and severity of the impairment;

>>(ii) The duration or expected duration of the impairment; and,

>>(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2) (2002); see also Cehrs v. Northeast Ohio Alzheimer's Research Center, 155 F.3d 775, 781 (6th Cir. 1998).

The Court assumes for purposes of the pending motion that Plaintiff is a disabled person within the meaning of the Rehabilitation Act. There is no direct evidence in the record that the Postal Service terminated Plaintiff because of her disability. The Court will also assume for purposes of the pending motion that Plaintiff can establish a prima facie case of disability discrimination. The Court finds that summary judgment in favor of the Postmaster General is appropriate because there is no evidence which rebuts the legitimate, non-discriminatory reason for Plaintiff's termination.

Regulations issued by the Department of Labor pursuant to the ADA permit employers to make inquiries into the employee's ability to perform job related functions. 29 C.F.R. § 1630.14(c) (2007). As interpreted by the Equal Employment Opportunity Commission, § 1630.14(c) permits employers to require medical

examinations of employees as part of the reasonable accommodation process.  29 C.F.R. Pt. 1630, App. 1630.14(c).  Both the employer and the employee have a duty to assist in the search to find a reasonable accommodation for the employee good faith.  <u>Mengine v. Runyon</u>, 114 F.3d 415, 420 (3rd Cir. 1997).  An employer is not required to accommodate the employee in a manner which would violate the rights of other employees under a collective bargaining agreement.  <u>Jasany v. United States Postal Serv.</u>, 755 F.2d 1244, 1252 (6th Cir. 1985).

It is not disputed in this case that the temporary light duty assignment that Plaintiff had been performing expired in or around March 2002.  Plaintiff seems to believe that because the OWCP had previously found that she was permanently disabled by reason of a job-related injury, the Postal Service was forever bound by that determination.  She apparently contends, therefore, that the Postal Service was continually obligated by that finding to automatically place her in light duty assignments.  Plaintiff overlooks, however, that the OWCP later issued a finding that she was not disabled by reason of a job-related injury.  Therefore, in order to obtain a light duty assignment, Plaintiff was obligated to follow the procedures outlined by the collective bargaining agreement.  <u>Jasany</u>, <u>supra</u>.  Plaintiff apparently contends that the Postal Service was required to place her in a light duty assignment while her claim for recurrence of disability was pending with the OWCP.  Plaintiff, however, cites

no authority for this proposition and the Court's research has not developed any.

Pursuant to the terms of the collective bargaining agreement, employees seeking temporary light duty assignments are required to submit a written request for such duty accompanied by a statement from a licensed physician, if possible, stating the anticipated duration of the need for light duty.  Plaintiff. Aff. Ex. B, CBA § 13.01(A).  Although Plaintiff had been performing light duty assignments for a number of years prior to her termination, there is no evidence in this record that in the preceding years Plaintiff was not required to follow the CBA provisions for obtaining light duty assignments.  The fact of the matter is that Plaintiff's temporary light duty assignment expired.  She was not entitled as of right to continue on light duty assignments indefinitely.  Although Plaintiff apparently requested a new light duty assignment, Plaint. Dep. Ex. 1, she failed or refused to provide medical documentation to support her claim as required by the CBA despite being given at least three chances to do so.[2]  In other words, Plaintiff failed to cooperate in the interactive process by following the terms of the CBA.

Thereafter, Plaintiff was simply absent without leave. The Rehabilitation Act does not prevent an employer from

---

[2] The Court notes that counsel for Plaintiff did submit some medical documentation to the Bulk Mail Center which was determined to be insufficient to establish Plaintiff's total disability from duty.  Plaint. Dep. Ex. 2.  Plaintiff, however, did not utilize the procedures in the CBA to contest this determination.  See CBA § 13.03.

enforcing its attendance policies. See Brenneman v. MedCentral Health Sys., 366 F.3d 412, 418-19 (6th Cir. 2004) (stating that employee who cannot meet employer's attendance requirements is not otherwise qualified for the position).

Karnes does not help Plaintiff establish pretext. As the Postmaster General correctly argues, Judge Spiegel did not conclusively find that there was a pattern and practice of discrimination against disabled employees at the Bulk Mail Center. Rather, Judge Spiegel found that plaintiff in the case had adduced evidence from which a juror could find that such pattern and practice existed. Karnes, 912 F. Supp. at 285. Judge Spiegel specifically stated, however, that whether there was in fact such a pattern and practice was an issue reserved for trial. Id. at 286.

Finally, Plaintiff argues in her brief that pretext is established because her supervisor once called her "a lazy piece of shit." Doc. No. 23, at 14. Plaintiff, however, quotes her own affidavit out of context. According to Plaintiff's affidavit sometime in 1997, her supervisor, Camille Winkler, overheard Plaintiff and another employee discussing their injuries. Winkler then stated to Plaintiff, "I didn't know you were really injured. I thought you were just a lazy piece of shit that did not want to work." Plaint. Aff. ¶ 24. Although Plaintiff asserts that this demonstrates the discriminatory atmosphere at the Bulk Mail Center, her affidavit goes on to state that "Ms. Winkler soon realized that I was an excellent worker, and we

16

earned each other's respect." Id.  Thus, to the extent that Winkler's comment occurred in a relevant time frame, Plaintiff's own affidavit demonstrates that Winkler bore no animus toward her because of her disability.  This comment does not constitute evidence that the reason for Plaintiff's termination is pretextual.

In summary, there is no evidence in this record from which a reasonable juror could find that the Postal Service discriminated against Plaintiff and terminated her employment because of her disability.  Rather, the record establishes that the Postal Service terminated Plaintiff after an extended absence after she failed or refused to provide documentation required by the terms of the collective bargaining agreement to substantiate another assignment to a light duty position.  Therefore, the Postmaster General is entitled to summary judgment in his favor.

### Conclusion

For the reasons stated, the Postmaster General's motion for summary judgment is well-taken and is **GRANTED**.  The complaint is **DISMISSED WITH PREJUDICE.  THIS CASE IS CLOSED.**

**IT IS SO ORDERED**.


Date May 4, 2007                   s/Sandra S. Beckwith
                                Sandra S. Beckwith, Chief Judge
                                  United States District Court